# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SOUTHERN OHIO MEDICAL CENTER,
Plaintiff,

Case No. 19-cv-261
Dlott, J.
Litkovitz, M.J.

vs.

MARK GRIFFITH and
COUNTRYSIDE RENTALS, INC.,
d/b/a Rent 2 Own,
Defendants.

**REPORT AND RECOMMENDATION**

This matter is before the Court on plaintiff's motion to remand this case to state court (Doc. 6) and defendant Countryside Rentals, Inc., d/b/a Rent 2 Own ("Countryside")'s opposing memorandum (Doc. 9). For the reasons stated herein, plaintiff's motion should be denied.

## I. Procedural background

### A. Notice of Removal

Plaintiff Southern Ohio Medical Center (SOMC) first filed this action in the Scioto County, Ohio Court of Common Pleas in September 2018. (Amended Notice of Removal, Doc. 13, Exh. A). SOMC brought the action to collect $153,656.49 for medical services that it provided to defendant Mark Griffith. SOMC brought two claims against defendants. First, SOMC claimed that defendant Griffith owes SOMC $153,656.49 for the medical services SOMC provided to him. (Count One). Second, SOMC claimed that Griffith's self-insured employer, Countryside, pre-approved and agreed to pay for those services through its agent and the third-party administrator, Group & Pensions Administrators, Inc. (GPA) (Count Two). SOMC alleged that Countryside "did not have a provider agreement with [SOMC] . . . ." (*Id.*). SOMC attached a "Notice under the Fair Debt Collection Practices Act" to the complaint which states: "As of

September 2018, you[1] owe [SOMC] the sum of [$153,656.49]" and that SOMC is the creditor. (*Id.*, Exh. A, p. 5).

Defendant Countryside removed the case to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(a) on the ground SOMC seeks to recover benefits under an employee welfare benefit plan, and plaintiff's claims are completely preempted by the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*[2] (Doc. 1). Countryside contends that SOMC seeks additional payments for services that Countryside allegedly pre-approved for defendant Griffith under Countryside's self-funded ERISA plan, which Countryside sponsors and administers. Countryside asserts that only the ERISA plan documents govern the amounts that Countryside must pay to SOMC for hospital goods and services provided to plan participants. Countryside alleges that SOMC could have brought its claim against Countryside under 29 U.S.C. § 1132(a)(1)(B) and/or § 1132(a)(3), and SOMC's claim is not supported by any legal duty arising outside of the ERISA plan. Countryside alleges that plaintiff's claim against it therefore arises under federal law, and the federal court has original jurisdiction over the claim.

**B. Plaintiff's motion for remand**

Plaintiff SOMC filed a motion to remand this case to state court on April 18, 2019. (Doc. 6). Plaintiff argues that the federal court lacks subject matter jurisdiction over the complaint because SOMC, a healthcare provider, has no connection to the ERISA plan that provided healthcare coverage for Griffith, Countryside's employee. SOMC alleges that the "self insured insurance plan" did "not have a provider contract with [SOMC]." Plaintiff alleges that ERISA

---

[1] "[Y]ou" is not identified in the notice.

[2] Section 1331 grants the district courts original jurisdiction over cases arising under the laws of the United States. 28 U.S.C. § 1331. Section 1441 provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . ." 28 U.S.C. § 1441(a).

2

would be implicated only if Countryside's employee, Griffith, were to sue Countryside, his employer/insurer, "for coverage problems with his ERISA plan." Plaintiff contends that because this is instead a collection suit brought against Griffith and his insurer Countryside, which allegedly pre-approved Griffith's care, the suit has no connection to ERISA. Plaintiff asserts that the case must therefore be remanded to state court.

Defendants oppose plaintiff's motion to remand.[3] (Doc. 9). Defendants assert that plaintiff's claims involve a dispute as to the amount owed under an ERISA plan for health care services provided by an out-of-network provider (SOMC) for services that the Plan's third-party administrator, GPA, allegedly pre-approved. Defendants allege that as such, plaintiff's claims are *completely* preempted by ERISA, and the Court has jurisdiction over plaintiff's claims. Defendants assert that plaintiff was an "out-of-network" provider, meaning SOMC had no agreement with defendants regarding the amount defendants would pay for the services SOMC provided. Defendants allege that plaintiff billed the plan more than $200,000.00 for those services and Countryside paid the benefits authorized under the plan for the reasonable value of the goods and services provided, which totaled "in excess of $60,000." Defendants contend that SOMC submitted the claims for payment to Countryside pursuant to an assignment of benefits under the plan. (*Id.*, Exh. A). Pursuant to the assignment, Griffith "agree[d] to the assignment of all third-party payor benefits to SOMC" and he further agreed to pay SOMC "for all charges not covered by this assignment of benefits." (*Id.*). Defendants argue that plaintiff's claims are preempted by ERISA because plaintiff brings the lawsuit as the assignee of benefits from Griffith's ERISA plan, and the complaint does not allege that defendants have any independent legal duty. Defendants allege that SOMC has stepped into Griffith's shoes as the assignee of

---

[3] Defendant Griffith filed the motion, but he presents arguments on behalf of both defendants in the motion.

benefits and seeks to recover additional benefits from Griffith's healthcare plan as payment for SOMC's services. Defendants argue that plaintiff's claims arise from and relate to administration of an ERISA plan, and SOMC has standing as an assignee of benefits to bring an ERISA claim to recover benefits allegedly due under the plan. (*Id.* at 4-6, citing *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991)).

## II. Applicable law

Removal is governed by 28 U.S.C. § 1441, which provides in relevant part: "[A]ny civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Thus, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The issue to be resolved on a motion to remand is whether the district court lacks subject matter jurisdiction or, in other words, whether the case was properly removed from the state court. 28 U.S.C. § 1447(c); *Weil v. Process Equipment Co. of Tipp City*, 879 F. Supp.2d 745, 748 (S.D. Ohio 2012) (citing *Provident Bank v. Beck*, 952 F. Supp. 539, 540 (S.D. Ohio 1996)). The removing party bears the burden of demonstrating that the district court has jurisdiction over the case. *Id.* (citing *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)). "The removal statute should be strictly construed and all doubts resolved in favor of remand." *Id.* (quoting *Her Majesty The Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989)).

"[W]hen ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal." *Gentek*

*Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In determining the propriety of removal, courts apply the "well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1983). Under the well-pleaded complaint rule, subject matter jurisdiction exists only when an issue of federal law exists on the face of the complaint. *Id.*; *Husvar v. Rapoport*, 430 F.3d 777, 781 (6th Cir. 2005). A corollary of the well-pleaded complaint rule is that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64. A case alleging a state law claim can be removed "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Weil*, 879 F. Supp.2d at 748-49 (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting in turn *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

ERISA is a federal statute that allows for complete preemption. *Id.* at 749 (citing *Davila, Inc.*, 542 U.S. at 207). ERISA's regulatory scheme is intended "to protect people participating in employee benefit plans." *K.B. by & through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 799 (6th Cir. 2019) (citing 29 U.S.C. § 1001(b)). Under ERISA's "comprehensive civil enforcement scheme," plan benefit "participants and beneficiaries are able 'to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan.'" *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)). Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. On the other hand, there is no complete preemption for a state law claim that stems from a duty that

5

"is not derived from, or conditioned upon, the terms" of an ERISA plan. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013).

A claim is completely preempted by section 1332(a) of ERISA if both prongs of a two-factor test are satisfied: "(1) the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'; and (2) the plaintiff does not allege the violation of any 'legal duty (state or federal) independent of ERISA or the plan terms.'" *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (quoting *Gardner*, 715 F.3d at 613) (quoting in turn *Davila,* 542 U.S. at 210)). "A state law claim that meets both requirements is 'in essence' a claim 'for the recovery of an ERISA plan benefit'" that is "subject to ERISA's enforcement scheme in federal court." *K.B. by & through Qassis*, 929 F.3d at 800-01 (quoting *Hogan*, 823 F.3d at 880).

### III. Defendants properly removed this case

SOMC contends that as a healthcare provider, it has no connection to the ERISA plan that provided healthcare coverage to Countryside's employee, Griffith. SOMC argues the Court lacks subject matter jurisdiction over the collection claims alleged in the complaint.

Defendants contend that they properly removed this case to federal court because SOMC's claims relate to an ERISA plan and fall within the scope of ERISA's civil enforcement provision, § 1132(a). (Doc. 9 at 4-6). Defendants argue that SOMC brings its claims as an assignee of benefits allegedly owed Griffith under Countryside's ERISA plan. Defendants contend that SOMC's claims are completely preempted and present a federal question over which this Court has subject matter jurisdiction.[4]

---

[4] Although defendants rely on *Cromwell*, 944 F.2d at 1277-1278, to argue that SOMC's state law claims are preempted by ERISA and were properly removed, the Sixth Circuit has characterized *Cromwell* as a "confusing case" in which the district court decided ERISA preemption nearly one year before it decided ERISA standing, a jurisdictional issue that is ordinarily decided as an initial matter. *Ward v. Alternative Health Delivery Systems, Inc.*,

6

### A. SOMC has standing to assert an ERISA claim

The first issue the Court must address is whether SOMC is a plan participant or beneficiary with standing to assert a claim under ERISA. *See Taylor-Sammons v. Bath*, 398 F. Supp. 2d 868, 875 (S.D. Ohio 2005) (citing *Ward*, 261 F.3d at 627). *See* 29 U.S.C. § 1132(a)(1)(b) (authorizing only plan participants and beneficiaries to sue to recover their benefits under a plan). A "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan[.]" 29 U.S.C. § 1002(7). A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). If the plaintiff lacks standing as a participant or beneficiary under ERISA, then the plaintiff's state law claims do not confer federal subject matter jurisdiction over the plaintiff's suit and the case must be remanded to state court. *Taylor-Sammons*, 398 F. Supp. 2d at 875 (citing, e.g., *Michigan Affiliated Healthcare System Inc. v. CC Systems Corp. of Michigan*, 139 F.3d 546, 550 (6th Cir. 1998) ("claims by anyone other than a participant or beneficiary fall outside the scope of ERISA's civil enforcement action and must be remanded to state court")). *See also Sexton v. Panel Processing, Inc.*, 754 F.3d 332, 334 (6th Cir. 2014) (the doctrine of complete preemption goes to the subject matter jurisdiction of the court) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc).

Under well-settled Sixth Circuit law, a health care provider "designated by the applicable ERISA Plans to receive and [which does] in fact receive Plan benefits in exchange for medical care provided to participants" does not meet "the statutory definition of 'beneficiary' under

---

261 F.3d 624, 627 (6th Cir. 2001) (citing *Cromwell*, 944 F.2d 1279) (Suhrheinrich, J., concurring); *Id.* at 1279-80 (Jones, J., dissenting)). The Court has therefore looked to other Sixth Circuit decisions for the applicable law and analysis.

7

ERISA." *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 545-46 (6th Cir. 2016) (quoting *Ward*, 261 F.3d at 627) ("The fact that [a healthcare provider] may be entitled to payment from [an insurance company] as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing.")). The Sixth Circuit in *Brown* noted that its position was consistent with that of every circuit that had considered the issue. *Id.* (collecting cases). The Court found the reasoning of the Second Circuit to be persuasive in this regard:

> "Beneficiary," as it is used in ERISA, does not without more encompass healthcare providers. Although the term "benefit" is not defined in ERISA, we are persuaded that Congress did not intend to include doctors in the category of "beneficiaries." Benefits to which a beneficiary is entitled are bargained-for goods, such as "medical, surgical or hospital care," rather than a right to payment for medical services rendered. . . . While [the Provider] may indeed be entitled to a benefit *qua* benefit through operation of the plan - *i.e.*, payment for its medical services - [the Provider] confuses the issue. The "benefit" the plan provides belongs to [the Provider's] patients; [the Provider's] claim to payment for covered services is a function of how [the insurer] reimburses healthcare providers under the Benefit Plan. That right to payment does not a beneficiary make.

*Id.* (quoting *Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253, 257-58 (2d Cir. 2015) (internal citations omitted)). The Sixth Circuit concluded that consistent with its prior decision in *Ward*, "a healthcare provider does not qualify as a statutory beneficiary under ERISA," and the healthcare provider in the case before it therefore lacked direct standing to bring its claims. *Id.* at 546. Consistent with Sixth Circuit case law, SOMC lacks statutory standing to bring a claim for benefits against Countryside under its patient, Griffith's, ERISA plan.

However, even when a healthcare provider lacks direct standing under ERISA to sue an insurer for the payment of insurance benefits, the healthcare provider may have derivative standing under § 1132(a). *Id.* The Sixth Circuit has acknowledged that a "broad consensus" now exists among federal appellate courts that "when a patient assigns payment of insurance

8

benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *Id.* at 547 (collecting cases). These courts have reasoned that "an assignment of the right to payment . . . necessarily include[s] the ability to enforce that right by bringing suit under ERISA to collect money owed." *Id.* (quoting *Am. Chiropractic Ass'n. v. Am. Specialty Health Inc.*, 625 F. App'x 169, 174-75 (3d Cir. 2015)). The Sixth Circuit in *Brown* found the following reasoning to be persuasive in this regard:

> These rulings [finding an assignment of benefits gave a healthcare provider derivative standing] are consistent with Congress's stated purpose in enacting ERISA: to "protect [] the interests of participants in employee benefit plans." 29 U.S.C. § 1001(b). Therefore, [i]t does not seem that the interests of patients or the intentions of Congress would be furthered by drawing a distinction between a patient's assignment of her right to receive payment and the medical provider's ability to sue to enforce that right. The value of such assignments lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front. Patients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider which will ordinarily be better positioned to pursue those claims. These advantages would be lost if an assignment of payment of benefits did not implicitly confer standing to sue.

*Id.* at 547 (quoting *North Jersey Brain and Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 373-74 (3d Cir. 2015) (internal citations omitted)). The Sixth Circuit concluded in *Brown* that the "assignment of the right to payment is sufficient to confer derivative standing to bring suit for non-payment under ERISA." *Id.*

There is no dispute that Griffith assigned his benefits under his employee healthcare benefits plan to SOMC. (*See* Doc. 9, Exh. A). Upon his admission to SOMC on October 17, 2017, Griffith signed a "Release of Information and Assignment of Benefits" in which he agreed to the following terms: "The undersigned agrees to the assignment of all third-party payor benefits to SOMC. . . ." (*Id.*). The effect of the assignment is that SOMC, the healthcare provider/assignee, "stands in the shoes of the [participant]," Griffith, and "can only assert claims

9

that could have been brought by" Griffith. *See Brown*, 827 F.3d at 547. As an assignee of Griffith's rights and benefits, "SOMC occupies the same legal position under [the] contract as did the original contracting party"; SOMC "can acquire through the assignment no more and no fewer rights than the assignor had, and [SOMC] cannot recover under the assignment any more than the assignor could recover." *Id.* at 548 (citing *Blue Cross of Calif. v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014)).

SOMC's claim to recover payment from Countryside for services that SOMC provided to Griffith falls within the scope of Griffith's assignment of rights and benefits to SOMC. *See Brown*, 827 F.3d at 547-48. At issue is SOMC's "right to payment" from Countryside, which "depend[s] on [Griffith's] assignments to the Providers. . . ." *Id.* at 548 (quoting *Anesthesia Care*, 187 F.3d 1045) (emphasis removed)). SOMC alleges it seeks payment for "services approved by [Griffith's] insurance plan," which is an ERISA plan. (Doc. 6 at 2). There is no allegation that the assignment of Griffith's benefits to SOMC was invalid. Further, SOMC concedes that Griffith could sue Countryside under ERISA. "[A]ny determination of benefits under the terms of [the Countryside] plan - i.e., what is 'medically necessary' or a 'Covered Service' - does fall within ERISA." *See Brown,* 827 F.3d at 548 (quoting *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 531 (5th Cir. 2009)). Because Griffith assigned his benefits under his ERISA insurance plan to SOMC, SOMC stands in Griffith's shoes and has derivative standing to enforce the terms of the plan.

### B. The first prong of the *Davila* test is satisfied.

Because SOMC has standing as a beneficiary to raise an ERISA claim, the Court must next determine whether SOMC is complaining about a denial of benefits under an ERISA plan.

Under the first prong of the *Davila* test – whether the state-law claim is based on the terms of an ERISA-regulated plan – the Court is not bound by "the label placed on a state law claim." *Hogan*, 823 F.3d at 880 (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002)). Rather, the question is "whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id.* "A claim likely falls within the scope of § 1132 when '[t]he only action complained of' is a refusal to provide benefits under an ERISA plan and 'the only relationship' between the plaintiff and defendant is based in the plan." *Id.* (quoting *Davila*, 542 U.S. at 211).

Here, SOMC alleges that defendant Countryside, through its third-party plan administrator, pre-approved the treatment services that SOMC provided to defendant Griffith and agreed to pay for such services before they were rendered. (Doc. 3 at 2). SOMC complains about Countryside's failure to pay insurance benefits which it can potentially recover only because of the terms of an ERISA-regulated plan. SOMC's claim for recovery of benefits against defendant Countryside is in essence a claim for benefits under an ERISA plan and satisfies the first prong of the *Davila* test.

### C. The second prong of the *Davila* test is satisfied.

Under the second prong of the *Davila* complete preemption test, the Court determines whether the plaintiff alleges the violation of an independent legal duty derived from a source other than the ERISA plan. A state-law claim is independent of ERISA when the duty conferred was "not derived from, or conditioned upon, the terms of" the plan and there is no "need[ ] to interpret the plan to determine whether that duty exists." *Gardner*, 715 F.3d at 614.

Here, SOMC claims a right to receive payment for treatment preapproved by defendant Countryside's agent and third-party administrator of its ERISA plan. SOMC alleges that in reliance on this preapproval, it provided medical treatment to Griffith and is owed $153,656.49

for such services. SOMC's nonpayment claim is implicitly based on the preapproval terms of the ERISA plan and requires a determination of whether its services fall within the plan's coverage. SOMC does not allege the violation of a legal duty by Countryside that is independent of ERISA. Therefore, the second prong for complete preemption is met.

Accordingly, the two prongs of the complete preemption doctrine are satisfied as to SOMC's claim against Countryside. *See Davila*, 542 U.S. at 204-05. SOMC's claim against Countryside is completely preempted by ERISA and confers federal jurisdiction on this Court.

**D. Defendant Griffith and ERISA jurisdiction**

There is no basis for finding ERISA jurisdiction over plaintiff's claim against Griffith. Defendants have not cited any authority to support a finding that SOMC's claim for payment against Griffith is completely preempted. The two requirements of complete preemption are not satisfied for this claim. SOMC does not claim it is entitled to benefits from Griffith because of the terms of an ERISA-regulated plan. (Doc. 3 at 1). SOMC alleges only that Griffith failed to pay for medical services it provided to him as its patient. (*Id.*, ¶¶ 1-2). Congress did not intend to preempt claims such as SOMC's claim against Griffith, which does not "implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *See Van Horn v. Securian Life Ins. Co.*, No. 1:19-cv-1315, 2019 WL 3346404, at *4 (N.D. Ohio July 25, 2019) (quoting *Penny/Ohlmann/ Neimann, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (citations omitted)). However, because the Court has federal jurisdiction over SOMC's ERISA claim against Countryside, the Court can exercise supplemental jurisdiction over SOMC's state law claim against Griffith if it chooses to do so. *See Ward*, 261 F.3d at 627.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's motion to remand this case to state court (Doc. 6) be **DENIED**.

Date: 11/12/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SOUTHERN OHIO MEDICAL CENTER,
    Plaintiff,

Case No. 19-cv-261
Dlott, J.
Litkovitz, M.J.

vs.

MARK GRIFFITH and
COUNTRYSIDE RENTALS, INC.,
D/b/a Rent 2 Own,
    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).